Argued September 27; affirmed October 25, 1949

# MONGER ET UX. *v.* DIMMICK ET AL.

210 P. 2d 929

*R. L. Whipple,* of Roseburg, argued the cause for appellants. With him on the brief were Orcutt & Long, of Roseburg.

*Louis Hoffman,* of Eugene, argued the cause for respondents. On the brief were Bailey & Hoffman, of Eugene.

Before LUSK, Chief Justice, and BRAND, ROSSMAN, BAILEY, HAY and PAGE, Justices.

HAY, J.

On January 7, 1944, the plaintiffs, as vendors, entered into a contract in writing with the defendant Carrol C. Dimmick, doing business as Dimmick Logging and Lumber Company, as purchaser, for the sale of all of the merchantable timber upon certain lands belonging to plaintiffs in Douglas County, Oregon. The agreed price was to be $1.50 per M. board feet for red and yellow fir and ponderosa pine, $5.00 per M. board feet for sugar pine, and $1.00 per M. board feet for white fir and all other kinds of merchantable timber. Cedar was expressly excluded from the sale. There was a down payment of $50, and the remainder of the purchase price was made payable as the purchaser should receive payment for his shipments of lumber to be manufactured from such timber. An additional fifty cents per M. feet was to be paid for the first million board feet of timber cut under the contract, to be credited as a payment upon the last timber to be cut. The purchaser was allowed a term of eight years from the date of the contract to complete the removal, manufacture and sale of the timber. He agreed to cut and sell sufficient lumber each year to entitle the vendors to receive at least $1,000 on account of the purchase price, or, in default thereof, to pay them at least $1,000 a year on account of such price. The purchaser

was given the right to erect a sawmill or sawmills upon the vendors' lands for the milling of the timber. He undertook to carry on his logging and lumbering operations in such manner as would result in no unnecessary interference with the vendors' use of the land.

Dimmick assigned the contract to Dimmick Logging and Lumber Company, a corporation, which was organized by the defendants and completely controlled by them.

■ The plaintiffs brought this suit to secure a rescission of the contract. The jurisdiction of a court of equity to decree rescission in such cases is well settled. 9 Am. Jur., Cancelation of Instruments, section 4. The complaint alleges that the defendant Carrol C. Dimmick breached the contract in the following particulars: (1) by failing to construct a sawmill upon plaintiffs' land; (2) by failing to comply with the contract provisions as to manufacture of timber into lumber, as to shipment thereof, and as to payment therefor; (3) by felling approximately 1,900,000 feet of timber suitable for manufacture into lumber under the contract, and, instead of manufacturing and shipping the same, leaving it lying on the ground in the woods, where it has deteriorated greatly in value; (4) by cutting cedar timber, in violation of the contract; (5) by cutting "piling" (by which we understand plaintiffs to mean timber suitable for use as piling), in violation of the contract; (6) by conducting his operations so as to cause unnecessary interference with plaintiffs' use of their land; and (7) by neglecting and refusing to account to plaintiffs for the timber which was cut.

The allegations of the complaint having been put at issue by the answer, a hearing was had in due course, and the trial judge, in a memorandum opinion, held

that five of the seven alleged breaches of contract, as hereinafter mentioned, had been substantially proved. A decree was entered, canceling and rescinding the contract and quieting title in plaintiffs to the land and the remaining timber, both standing and fallen, thereon. From this decree, the defendants have appealed.

Although the defendants filed a joint answer herein, it is to be understood that, hereinafter, when "the defendant" is mentioned, we refer to the defendant Carrol C. Dimmick.

It is urged that the court erred in finding that the defendant wrongfully cut and removed piling from the premises. What the court actually found in this connection was that the defendant had cut and removed piling timber, but had failed to account and pay therefor. The trial judge was of the opinion that the term "merchantable timber" included piling, and that, as the contract had not fixed a price for piling, the purchaser should have paid the reasonable market value therefor.

▪ The term "merchantable timber" is one in common use in timber sales contracts as descriptive of the grade or quality of the timber sold. *Lee Lumber Co. v. Hotard*, 122 La. 850, 48 So. 286, 129 Am. St. Rep. 368, 370; 34 Am. Jur., Logs and Timber, section 11. For the purposes of this case, we adopt the following definition of the term:

> "* * * 'all merchantable timber,' as those words are used in the contract under consideration, is all timber—whatever its size—that had, at the date of the contract, or may have during the life of the contract, a commercial value in that locality, for the purpose of manufacture into lumber, or for any other purpose. * * *" Adams v. Hazen, 123 Va. 304, 323, 96 S.E. 741, 746.

See also *Great Southern Lumber Co. v. Newsom Bros.,* 129 Miss. 158, 91 So. 864; *McCorkle & Son v. Kincaid,* 121 Va. 546, 93 S.E. 642; *Tenny, et al., v. Mulvaney, et al.,* 9 Or. 405, 411.

■ It is true that the contract contemplated the manufacture of the timber into lumber and, therefore, might be held not to have included trees too small to produce lumber. *Parham v. Robins,* 197 Ga. 386, 29 S.E. 2d 608. However, it does not appear that timber suitable for piling cannot be cut into lumber. It was the intention of the parties that the timber should be milled at a sawmill to be erected for that purpose. Moreover, the amounts and times of payment were to be arrived at through the sale of the lumber so manufactured. It would seem, therefore, that the cutting and removal of trees for piling, rather than for manufacture into lumber, was, in itself, a breach of the contract. *Roots v. Boring Junction Lumber Co.,* 50 Or. 298, 316, 92 P. 811, 94 P. 182.

■ The court found that the defendant had failed to pay plaintiffs the additional fifty cents per M. board feet for the first million board feet of timber cut on the premises, as provided in the contract. Defendants argue that the initial payment of $50 should have been credited on this account. In their answer, however, they specifically claimed such payment as a credit on the first year's $1,000 required minimum payment. The additional fifty cents per M. was not paid. This was a breach of the contract.

The court found that the defendant permitted approximately two million feet of timber to be cut and left lying in the woods. This is assigned as error. The defendants erected a sawmill upon land adjoining that of plaintiffs. After operating this sawmill for a brief

period, they transferred their interests therein to one B. J. Lammers, who ran it for some time. Defendants admit that considerable timber was cut and left in the woods, but claim that the major portion thereof was cut by Lammers, without their permission or authority, and deny that they are responsible for Lammers' acts in the premises.

■ The evidence is clear that the defendants were aware that Lammers was cutting plaintiffs' timber. Besides other evidence of this fact, it was shown that, when Lammers cut some cedar timber on plaintiffs' land, plaintiffs complained thereof to defendants, who notified Lammers to stop cutting cedar. This, in effect, is admitted by defendants, although they claim that what they told Lammers was to desist from cutting cedar timber, or any other kind of timber upon plaintiffs' lands. However, there was a conflict of testimony upon the point, and we are satisfied that the court's finding was in accord with the weight of the evidence.

■■ The evidence did not establish that plaintiffs accepted Mr. Lammers as purchaser and released defendant. That being so, there was no privity of contract between Lammers and the plaintiffs, and the defendant was not relieved of his obligations to plaintiffs under the contract. *Corvallis & Alsea River R. Co. v. Portland E. & E. Ry. Co.*, 84 Or. 524, 539, 163 P. 1173; *Merchant Land Co. v. Barbour*, 65 Or. 235, 130 P. 976, 132 P. 710; *Urban v. Phy, et al.*, (C.C.A. 9th) 24 F. 2d 494, 495; 55 Am. Jur., Vendor and Purchaser, sections 426, 427; Anno., 125 A.L.R. 979, 983. In our opinion, the defendant cannot evade responsibility for Lammers' actions in cutting timber on plaintiffs' land and leaving it lying in the woods. In other words, failure by defendant and his assigns to mill the timber with reason-

able diligence after it was felled was a breach of contract. It resulted in depreciation of the timber, delayed milling and sale thereof, and interfered unnecessarily with plaintiffs' use of the land. *Woodard v. Glenwood Lbr. Co.*, 171 Cal. 513, 153 P. 951, 955.

We have deemed it unnecessary to consider whether the contract in suit operated so as to convey an interest in land (*Anderson v. Miami Lbr. Co.*, 59 Or. 149, 154, 116 P. 1056; *Kee v. Carver*, 95 Or. 406, 412, 187 P. 1116; *Williams v. Barbee*, 165 Or. 260, 271, 106 P. 2d 1033), or only as a license or permit to enter upon plaintiffs' land and cut timber thereon (*Coquille Mill & Tug Co. v. Robert Dollar Co.*, 132 Or. 453, 469, 285 P. 244). If it granted a mere license, the question of whether or not such license was assignable would be pertinent. *Emerson v. Fisk*, 6 Me. 200, 19 Am. Dec. 206; *Bruley v. Garvin*, 105 Wis. 625, 81 N.W. 1038, 48 L.R.A. 839; 34 Am. Jur., Logs and Timber, section 49; Anno., 70 L.R.A. 902. These points were not argued before us, and we mention them only by way of caveat.

■ The court's finding that defendant wrongfully cut cedar timber upon the plaintiffs' land is complained of as erroneous. The cedar, as has been stated, was cut by Lammers, and what has been said above with reference to the down-timber left in the woods by him is equally applicable here. Only a small amount of cedar was cut—perhaps ten or twelve thousand feet—but such cutting was a breach of the contract.

As for the court's finding that defendant failed to account for the timber which was cut and removed from the property, the defendants contend that the evidence is that only some 130,000 feet of timber was cut by them, and only some 78,000 feet thereof removed, manufactured into lumber and sold. They contend

further that the minimum payment of $1,000 a year, which, they say, they either duly paid or duly tendered to plaintiffs, was more than sufficient to pay for such timber. Their position, in this regard, is that the contractual duty of the defendant Carrol C. Dimmick to account for lumber manufactured and sold was substantially complied with.

■ The contract was dated January 7, 1944. On January 1, 1945, plaintiffs demanded an accounting for timber cut during 1944. No accounting of any sort was received until July, 1945, at which time defendants gave plaintiffs a slip of paper bearing a penciled memorandum, as follows:

"Monger Timber Deliveries at the Mill   50,310
   27,321

   77,631 M
   2

  155,262 "

As an accounting, it must be admitted that this was inadequate and even unintelligible, and the defendants do not now claim anything for it.

After making the down payment of $50, defendants paid nothing further on account of the $1,000 minimum required payment for 1944, until January 20, 1945, when they paid $500, and asked for a few days' time to pay the remainder. In July, 1945, nothing further having been paid, plaintiffs notified defendant orally that, because of his failure to make a satisfactory accounting, plaintiffs would consider the contract as rescinded. Within a few days thereafter defendants paid plaintiffs $450, thereby completing the required minimum payment for 1944. On December 19, 1945, they handed plaintiffs a statement purporting to show

that 77,163 board feet of logs and 68,392 linear feet of piling had been cut by them on plaintiffs' property during 1944 and 1945. At the same time, they tendered plaintiffs a check for $1,000 as and for the minimum payment for 1945 under the contract. This tender was rejected by the plaintiffs, on the ground that they considered that the contract had been breached by defendant and was no longer in effect.

The purported accounting was certainly inadequate in that it did not show to whom the lumber was sold, or at what time or times payment was received therefor. Moreover, it did not segregate by species the footage purported to have been cut, in accordance with the different prices fixed by the contract. We hold that the trial court was correct in concluding that defendant had failed to account for timber cut and removed from the premises.

On January 4, 1946, plaintiffs notified defendant Carrol C. Dimmick in writing that, because of various acts on the part of defendants which, in plaintiffs' opinion, constituted breaches of contract (some of which have been mentioned above), they considered the contract as at an end and themselves as no longer obligated thereby.

Although the Dimmick Logging and Lumber Company, a corporation, was not originally a party to the suit, it joined in the answer to plaintiffs' complaint, and, during the hearing, was made a party defendant by order of court.

■ We are of the opinion that, because of the various breaches discussed above, the plaintiffs were justified in rescinding the contract. The decision of the lower court was manifestly right. The decree is affirmed, with costs.